Rivera de Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Juan Quiñones, demandado y aquí apelante, acude ante nos mediante recurso de apelación presentado el 31 de julio de 1997. Solicita que revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 27 de junio de 1997.
La adecuada comprensión del asunto ante nuestra consideración requiere que expongamos brevemente el trasfondo fáctico y procesal del caso.
I
El 8 de julio de 1993, el Departamento de Servicios Sociales, hoy Departamento de la Familia, solicitó la *1035 custodia del menor Juan Gabriel Quiñones Pérez al amparo del Artículo 32 de la Ley Núm. 75 de 20 de mayo de 1980.
Evaluada la petición a tales efectos, el entonces Tribunal Municipal de Isabela emitió resolución de igual fecha disponiendo que el menor Juan Gabriel Quiñones Pérez, hijo de Juan Quiñones y Aida Pérez, debía ser removido de su hogar y puesto provisionalmente bajo la custodia del Departamento de Servicios Sociales. Ello respondió a que existían sospechas de abuso sexual por parte del padre hacia dicho menor. Se ordenó, además, brindarle tratamiento médico al niño.
Los procedimientos se continuaron en el Tribunal Superior, Sala de Asuntos de Menores de Aguadilla. El 15 de diciembre de 1993, las partes estipularon que la remoción del menor fue efectuada conforme a derecho. En esa ocasión no se adjudicó el tipo de maltrato o negligencia y quedó pendiente la evaluación final del caso por parte de la Dra. Doris Knudson, a lo cual el demandado no se opuso.
El 5 de octubre de 1994, el tribunal determinó que el niño debía quedarse bajo la custodia del Departamento de la Familia y que tanto él como su familia debían recibir la terapia adecuada. Posteriormente se declaró sin lugar una moción de reconsideración. Luego se trasladó el caso al Tribunal Tutelar de Menores, Sala de Arecibo.
Celebrada la vista en su fondo, el Tribunal de Primera Instancia, Sala Superior de Arecibo, emitió sentencia determinando que el menor había sido víctima de actos lascivos por parte de su padre. Este hecho no fue aceptado por el demandado ni por su esposa, madre del niño. Además, éstos se negaron- a recibir tratamiento dirigido hacia su rehabilitación.
Ante tal negativa y existiendo la probabilidad de que los actos se repitiesen y el menor no tuviese a quien acudir para obtener protección, el tribunal determinó concederle la custodia al Departamento de la Familia. No obstante, dispuso que las relaciones filiales se continuarían, pero bajo supervisión.
Inconforme fcon tal determinación, acude ante nos el padre del menor, Juan Quiñones, mediante el presente recurso y señala los errores que a continuación transcribimos literalmente:

“1. Erró el Tribunal de Primera Instancia al concluir en su sentencia que el Departamento de la Familia y/o Servicios Sociales había actuado conforme a derecho, y que el niño ha sido abusado sexualmente.

2. Erró el Honorable Tribunal de Primera Instancia en su sentencia al no disponer en forma adversa la actitud de Servicios Sociales y/o Departamento de la Familia de no presentar prueba que no fuese el refrito de la Dra. Doris González de Knudson.

3. Erró el Honorable Tribunal de Primera Instancia al aceptar el traslado del Tribunal Tutelar de Menores, sin la anuencia de la parte demandada y sin consultar a las partes.

4. Erró el Tribunal de Primera Instancia al no darle el peso probatorio al perito siquiatra de la parte demandada que merecía y que no fue contradicho.

5. Erró el Honorable Tribunal de Primera Instancia al no ser más explícito en su sentencia sobre los hechos en que fundaba su Rratio decidendil, y además en no atestar en dicha sentencia el contenido de la declaración o manifestaciones del niño en Cámara y en la cual no tuvimos la oportunidad de estar presentes por haberlo estipulado.”
*1036 Luego de varios incidentes procesales, la exposición narrativa de la prueba fue aprobada por el Tribunal de Primera Instancia el 3 de junio de 1999.
El 7 de septiembre de 1999 presentó su alegato el Procurador General y el 20 de diciembre de 1999 hizo lo propio la parte apelante. Con el beneficio de la posición de ambas partes estamos en condiciones de resolver.
II
Los errores primero, segundo, cuarto y quinto van, dirigidos a impugnar la apreciación que de la prueba hiciera el foro recurrido y en virtud de la cual llegó a la determinación de que el apelante había abusado sexualmente de su hijo y que las circunstancias requerían que el menor permaneciese bajo la custodia del Departamento de la Familia.
El Artículo 3 de la Ley Núm. 75 de 28 de mayo de 1980, conocida como Ley de Protección a Menores, declara que el Estado Libre Asociado de Puerto Rico, tiene un interés preeminente en la protección y el bienestar del menor y que persigue velar porque todos los menores de Puerto Rico tengan la oportunidad de lograr un óptimo desarrollo físico, mental, emocional, espiritual y moral.
La referida pieza legislativa fue aprobada en respuesta a la inquietud de los miembros de la Asamblea Legislativa ante la desgraciada realidad de muchos niños y niñas que eran y son objeto del abuso físico, sexual y emocional de aquellos que vienen obligados moral y legalmente a proveerles atención, amor y los cuidados propios en las distintas etapas de su desarrollo. Ante el reconocimiento de la lamentable existencia del maltrato a los menores fue que ésta ley entró en vigor a fin de que pudiera convertirse en una herramienta útil para abordar y erradicar tan terrible problema. Departamento de la Familia v. Soto, _ D.P.R. _ (1999), 99 J.T.S. 21, opinión de 2 de marzo de 1999.
La filosofía de que el plan de permanencia ideal para todo niño removido de su hogar biológico es el retomo a sus padres, permea a través de la legislación relativa a la protección de menores. Pérez Suárez v. Departamento de la Familia, _ D.P.R. _ (1999), 99 J.T.S. 15, opinión de 17 de febrero de 1999. Sin embargo, aunque la referida Ley 75 reconoce que el hogar debe ser el medio por excelencia para lograr el óptimo desarrollo de un niño, también toma conciencia de la inescapable realidad de que cuando los padres o aquellos que les sustituyen hacen a sus hijos o pupilos víctimas del maltrato o la negligencia, o los ponen en riesgo de ello, es la obligación del Estado intervenir inmediatamente para proteger a los menores. Ello tiene que ser así, antes de que el daño ocasionado o en riesgo de suceder por la acción u omisión de los padres o personas responsables del cuidado del menor, sea irreparable. Artículo 3 de la Ley Núm 75, supra. 
El Departamento de la Familia es la agencia ejecutiva que tiene la facultad para adoptar las reglas, normas y reglamentos necesarios, así como para establecer los programas de servicios y estructuras, y los procedimientos pertinentes que sean necesarios para hacer realidad la política enunciada en la citada ley. Ante ello tiene la autoridad para intervenir en todos los casos de maltrato o negligencia de los que advenga en conocimiento. Asimismo, es responsable de la prevención, identificación, investigación y tratamiento de todo menor que sea víctima de maltrato o negligencia, incluyendo el incoar y presentar acciones legales pertinentes en los tribunales. 
En cuanto al procedimiento para la intervención de los tribunales, el Artículo 29 de dicha Ley provee lo siguiente:

“Todos los casos de maltrato o negligencia, incluyendo los de negligencia institucional, que necesiten la intervención del tribunal, se ventilarán en el Tribunal de Primera Instancia, Sala de Relaciones de Familia. En 
*1037
los casos de emergencia se procederá según lo establecido en la see. 431 de este título.

El tribunal podrá privar de la custodia de manera provisional o en caso de emergencia a los padres o a la persona responsable del menor cuando determine que éste es o está en riesgo de ser víctima de maltrato o negligencia, según dicha circunstancia o situación se define en este Capítulo. ”

En los casos de emergencia el procedimiento es el siguiente:
El Tribunal de Distrito o el Juez municipal tendrán competencia concurrente en los casos de emergencia en que está envuelta la protección de un menor que haya sido o sea víctima de maltrato o negligencia.
A los efectos de que los tribunales puedan adquirir jurisdicción a tenor con las disposiciones de este Capítulo, se deberá seguir el siguiente procedimiento: El técnico o trabajador social del Departamento podrá comparecer y declarar ante [un] Juez de Distrito o Juez Municipal, bajo juramento, en forma breve y sencilla, mediante un formulario preparado al efecto indicativo y demostrativo de que la seguridad personal de determinado menor peligra si no se toma acción inmediata para su protección.
Cuando se trate de un caso en que el padre se niegue a dar su consentimiento para el tratamiento médico del menor, podrá hacer la petición de una orden autorizando el tratamiento cualquier familiar o parte interesada, así como el médico o funcionario del hospital en que se encuentre o esté en tratamiento el menor, o un trabajador del Departamento.
El juez, luego de examinar el documento y de interrogar al técnico o trabajador social, en los casos en que se solicita la custodia de emergencia u otra medida para la protección del menor, o al médico, persona o funcionario del hospital informante, cuando se solicite una orden para tratamiento médico, podrá requerir la presencia de testigos si lo estimare necesario; requerirá la comparecencia de los padres, custodios o de la persona contra quien se radique la querella. Si se desconociere el paradero del padre o de la persona contra quien se hubiere radicado la querella o si la urgencia del caso impidiere esperar a notificarle personalmente a éstos, se cursará la notificación usando los medios de comunicación que las circunstancias del caso permitan. Sin embargo, el tribunal podrá tomar la determinación necesaria, aún sin la notificación a los querellados, cuando la urgencia del caso no permita dilación alguna en los procedimientos.
El Juez podrá tomar la determinación que considere más adecuada para el bienestar inmediato del menor, incluyendo una orden disponiendo que inmediatamente se ponga al menor bajo la custodia del Departamento de la Familia o disponiendo que se efectúe el tratamiento médico de que se trate. El Departamento podrá colocar al menor que necesite protección en un Centro de Custodia que no sea para menores que cometen faltas, o con un familiar de éste que pueda asumir responsabilidad por el menor; Disponiéndose, que el menor no podrá ser sacado de Puerto Rico.
Cualquier orden expedida por un juez a tenor con las disposiciones de este Capítulo, a excepción de la orden para tratamiento médico, deberá notificarse al Tribunal de Primera Instancia, Sala de Relaciones de Familia, dentro de las veinticuatro (24) horas de haberse expedido dicha orden, ello a los efectos de que el Tribunal de Primera Instancia pueda continuar con los procedimientos de rigor en estos casos. Dicha orden deberá notificarse simultáneamente a la oficina local del Departamento. 
En el caso de autos, surge tanto del análisis de la exposición narrativa de la prueba oral como de los documentos que obran en el expediente, que las conclusiones del foro de instancia están plenamente respaldadas por la prueba que tuvo ante sí.
*1038 El Departamento de Servicios Sociales, hoy Departamento de la Familia, presentó como testigo a la Dra. Doris González de Knudson. Esta fue cualificada como perito por su especialidad en el manejo terapéutico de niños maltratados sexualmente.
Explicó que se le refirió el caso en 1993 cuando era asesora de la Secretaria del Departamento de Servicios Sociales. Expresó, además, que la vista se celebró en el año 1994 y en el 1995 tuvo oportunidad de evaluar al niño en una vista de seguimiento.
Su evaluación y análisis llevó a la consideración del caso como uno de abuso sexual. En su informe recomendó al tribunal que la custodia legal permanente le fuese concedida al Departamento de Servicios Sociales con el fin de garantizar la seguridad y pleno desarrollo del menor.
Para llegar a dicha recomendación tomó en consideración el hecho de que el niño tenía un padre que al no aceptar los hechos, la posibilidad de iniciar y beneficiarse de un proceso terapéutico era nulo. Además, existía el elemento de que la madre no creía lo que decía el menor y optó por mantenerse al lado del agresor. Esto último, explicó la perito, fue evidenciado en la entrevista que sostuvo junto al niño y su madre, quien en su presencia trató de convencer al menor de que no era cierto que hubiesen ocurrido los actos constitutivos del maltrato.
Por la parte demandada fue cualificado como perito el Dr. José Luis Galarza Arbona, psiquiatra. Declaró, en síntesis, haber visto entre seis u ocho casos de Ley 75 y cuatro o cinco de abuso sexual. Este también tuvo la oportunidad de entrevistar al niño y a sus padres biológicos y se leyó el informe de la doctora Knudson así como los de dos sicólogos del Estado que obraban en los autos.
Explicó que de sus investigaciones y los informes disponibles no existían datos o información suficiente para llegar a la conclusión de que el niño hubiese sido abusado sexualmente. Estuvo en desacuerdo con las conclusiones de la Dra. Knudson y planteó que el niño debía estar con sus padres biológicos.
Declaró además por la parte demandante, Milagros Roldán, sobrina del demandado y custodio del menor. Esta expreso que el niño no le había hablado del abuso y que éste quería estar con sus padres. Sobre ello la doctora Knudson explicó que era natural que el niño quisiera estar con ellos, pues lo que él desea y necesita es estar con sus padres, pero sin riesgo de ser abusado.
Finalmente, el niño hizo su declaración en entrevista privada con el Juez.
En lo que se refiere al valor de la prueba pericial, nuestro Tribunal Supremo ha establecido que el criterio rector en relación con prueba de ésta índole es que la misma resulte de ayuda para el juzgador de los hechos, siendo admisible dicho testimonio pericial aun cuando el mismo verse sobre la cuestión a decidir. Pueblo v. Canino Ortiz, _ D.P.R. _ (1993), 93 J.T.S. 157, opinión de 7 de diciembre de 1993.
En el caso de autos, el tribunal tenía plena discreción para descartar el testimonio de uno de los peritos y aceptar el de otro, como lo hizo con respecto al de la doctora Knudson. El juzgador de hechos no está obligado a aceptar las conclusiones de un perito. Figueroa Hernández v. Rubén del Rosario, _ D.P.R. _ (1998), 98 J.T.S. 151, opinión de 23 de noviembre de 1998; Pueblo v. Montes Vega, 118 D.P.R. 164 (1986). De otra parte, no podemos perder de vista que la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho. Regla lo de Evidencia. 
Es doctrina reiterada aquella que establece que las sentencias dictadas por nuestros tribunales tienen a su *1039 favor la presunción de validez y corrección. Torres Rosario v. Alcaide, _ D.P.R. _ (1993), 93 J.T.S. 100, opinión de 24 de junio de 1993. Así, también, como parte de ellas, las determinaciones de hechos, la apreciación de la prueba del tribunal sentenciador, y la credibilidad que ésta le mereció, gozan de la deferencia y respeto de los foros apelativos por la oportunidad superior que tuvo el tribunal de instancia para aquilatar la prueba testifical. Sin lugar a dudas el juez que vio y oyó la prueba es quien en mejor posición está para creerla o no. Méndez v. Morales, _ D.P.R. _ (1996), 96 J.T.S. 149, opinión de 15 de noviembre de 1996; Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986).
A tenor de lo anterior, en nuestro rol como foro apelativo las determinaciones del tribunal de instancia deben ser objeto de nuestra deferencia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987).
Un tribunal apelativo no debe intervenir innecesariamente porque puede estar usurpando las facultades adjudicativas del tribunal apelado. Morán Simón v. García Cristóbal, 106 D.P.R. 155 (1977). Esto no significa que renunciemos a nuestra función revisora en instancias apropiadas y meritorias. Por ello, aunque a tenor de esta doctrina las determinaciones del juzgador de instancia gozan de gran deferencia por este Tribunal, intervendremos en los casos en que dicho foro haya actuado con arbitrariedad, haya incurrido en un abuso de discreción o en aquellos en que actuara movido por pasión, prejuicio o parcialidad. Benítez Guzmán v. García Merced, _ D.P.R. _ (1990), 90 J.T.S. 62.
En el presente caso, el Tribunal, después de escuchar los diversos testimonios, incluyendo el del menor y analizar toda la evidencia, acogió la prueba que le mereció credibilidad e hizo las determinaciones que le parecieron correctas y justas, dentro de las circunstancias particulares del caso y la normativa aplicable. La decisión del tribunal está respaldada por la prueba, según surge de los documentos que obran en el expediente y de la exposición narrativa presentada por las partes.
El interés que tiene el Estado en que el niño sea reintegrado con su familia exige que sea bajo circunstancias adecuadas. Si el niño ha sido abusado por su padre, su familia no acepta los hechos y además se niega a recibir tratamiento, no existen las condiciones para que regrese con ellos. No habiéndose demostrado razones que lo justifiquen, sería injusto sustituir el criterio del juez de instancia. Orta v. Padilla Ayala, _ D.P.R. _ (1995), 95 J.T.S. 21, opinión de 8 de febrero de 1995. Los errores aducidos no se cometieron.
En lo que respecta al tercer error, este resulta inmeritorio y tardío. Los señalamientos ante los tribunales apelativos hay que sustentarlos con prueba adecuada. Las meras alegaciones no son suficientes, así como tampoco las conjeturas. Pueblo v. López Guzmán, _ D.P.R. _ (1992), 92 J.T.S. 142, opinión de 28 de octubre de 1992.
No habiéndose cometido los errores señalados, resulta imperativo confirmar la sentencia apelada.
III
Por los fundamentos expuestos, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*1040 ESCOLIOS 2000 DTA 66
1. 8 L.P.R.A. see. 403.
2. 8 L.P.R.A. sec. 403.
3. Artículo 5 de la Ley 75, 8 L.P.R.A. sec. 405.
4. Artículo 31 del la Ley Núm. 75, 8 L.P.R.A. sec. 431.
5. En el ámbito del derecho probatorio, la Regla 53 de las de Evidencia, 34 L.P.R.A. Ap. IV, R. 53, establece los requisitos particulares que debe cumplir aquella persona que va a emitir una opinión pericial:

“(A) Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberán ser probados antes de que el testigo pueda declarar como perito.

(B) El especial conocimiento, destreza, experiencia, adiestramiento o instrucción de un testigo pericial podrán ser probados por cualquier evidencia admisible, incluyendo su propio testimonio. ”

6.32 L.P.R.A. Ap. IV, R. 10.